NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>    v.<br><br>MATTHEW HULL, MICHELE C. HULL, AND AARON HULL,<br><br>       Defendants. | Civil Action No. 09-1303 (SDW)<br><br><br>**OPINION**<br><br><br>January 24, 2012 |

**WIGENTON**, District Judge.

Before the Court is a motion for summary judgment by the plaintiff, the United States ("Government" or "Plaintiff") against defendants, Matthew Hull, Michele C. Hull, and Aaron Hull (collectively "Defendants" or the "Hulls") ("Government's Motion"). Also before this Court is Defendants' cross motion for summary judgment ("Cross Motion").

This Court has jurisdiction over this action pursuant to Title 28, United States Code Sections 1331, 1345 and 1346(f). Venue is proper under Title 28, United States Code Sections 1391(b) and (c). This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78.

For the reasons stated below, this Court 1) grants the Government's Motion and 2) denies Defendants' Cross Motion.

**FACTUAL AND PROCEDURAL BACKGROUND**

The following is a brief summary of the facts and procedural history for the instant matter.

1

Old Mine Road runs parallel to the Delaware River and covers the length of the Delaware Water Gap National Recreation Area. (Am. Compl. ¶ 12.)  It is on the National Register of Historic Places.  (*Id.* ¶¶ 19-20.)  Approximately 300 yards of Old Mine Road (or "Road") cross a portion of the Defendants' property ("Hulls' Property"). (*Id.*)  The Township of Sandyston ("Sandyston" or "Sandyston Township") acquired its interest in the relevant portion of Old Mine Road from George Smith in 1800.  (Pl.'s Br. Ex. A, B.)  The Government claims it owns the portion of Old Mine Road at issue in this matter, as a result of Sandyston Township transferring its interest.  (Am. Compl. ¶ 21.)

On August 4, 1988, the Sandyston Township Committee introduced Ordinance 6-88 as "an ordinance, donating by deed, a portion of Old Mine Road and Kuhn Road, to the National Parks Service."  (Pl. Br. Ex. D 2.)  On September 1, 1988, the Sandyston Township Committee passed Ordinance 6-88 ("Ordinance 6-88"), which included the following language:  "AN ORDINANCE PROVIDING FOR THE DONATION BY DEED . . . OF OLD MINE ROAD"; Schedule A provides a "DESCRIPTION OF OLD MINE ROAD TO BE TAKEN OVER BY THE FEDERAL PARK SERVICE"; and Schedule C refers to a map of "PROPOSED FEDERAL PARK TAKEOVER OF PORTIONS OF OLD MINE ROAD. . . ."  (Pl.'s Br. Ex. F 1-2, Sch. A, Sch. C.)  Ordinance 6-88 refers to the description of Old Mine Road and Kuhn Road as described in Schedule A and includes the following clauses:

> WHEREAS, it appears that said portions of road are not needed for public purposes; and
> WHEREAS, the use of the said portions of Old Mine Road and Kuhn Road for public purposes and the maintenance of the same as public roads would cause a financial burden on the Township without any beneficial return to the public; and
> WHEREAS, there appears to be no public need for a public road in the location of the roads which are portions of Old Mine Road and Kuhn Road described in Schedule A, Schedule B, and Schedule C hereof.

2

> NOW THEREFORE, BE IT ORDAINED by the Township [Committee] of the Township of Sandyston that the roads which are a portion of Old Mine Road and Kuhn Road hereinbefore described and such right, title and interest as the Township of Sandyston may have in said road and such public easement as may exist therein be and is hereby vacated and extinguished.

(Pl.'s Br. Ex. F 1.)

On January 18, 1989, Sandyston transferred "whatever interest" it had in Old Mine Road to the National Park Service ("NPS") via Quitclaim Deed, but the Deed was not filed until 2008. (Pl.'s Br. Ex. G.)[1] The landowners whose property adjoined Old Mine Road in 1988 and 1989 were Charles C. Lennington ("Lennington"), John B. Dodd ("Dodd") and Enos Harker ("Harker").

By letter dated September 15, 1993, Superintendent Rector communicated the following to Harker: "As you may recall, the National Park Service was willing to accept responsibility of the road [Old Mine Road] and was prepared to accept the donation by the Township of Sandyston. However, because of a technical problem, the donation was never accomplished and you as adjoining property owners now own portions of the road." (Pl.'s Br. Ex. 13.)

Lennington and Dodd both received similar letters and provided Warranty Deeds conveying portions of Old Mine Road to the NPS. (Pl.'s Br. Ex. I, Ex. J.) Harker did not provide the NPS with a Warranty Deed, and in fact, on September 25, 2001, Harker conveyed his property to himself and included the following statement:

> No portion of my property shall be sold or conveyed to The United States of America or any of its agencies including The National Park Service or to any other federal, state, municipal or governmental organization or entity, nor shall any such organization or entity own or acquire the same in any fashion. I direct that these restrictions shall be deemed appurtenant to the

---

[1] Specifically, the Quitclaim deed provides "This Deed is called a Quitclaim Deed. The grantor [Sandyston Township] makes no promises as to ownership or title, but simply transfers whatever interest the Grantor has to the Grantee." (Pl.'s Br., Ex. G.)

>      property hereinabove described and shall run with the land and all
>      parts thereof, in perpetuity.

(Pl.'s Br. Ex. N; Compl. ¶ 20; Defs.' Statement of Fact ¶ 20.)  Harker's deed was recorded on October 4, 2001.

Harker passed away in 2006.  (Defs.' Statement of Facts ¶ 23.)  The Hulls purchased Harker's farm, referred to herein as Hulls' Property, for $1,000,000 in 2007.  The Hulls' deed was duly recorded on September 21, 2007.  (Defs.' Statement of Facts ¶¶ 24-25; Pl.'s. Br. Ex. O.)  Sometime during 2007, the Hulls placed a gate or blockade across the portion of Old Mine Road that traverses the Hulls' Property.

On March 23, 2009, the Government filed an initial complaint in this matter.  On January 6, 2010, the Government filed an amended complaint ("Amended Complaint") with two counts for a "permanent injunction, Ordering the Defendants to remove any blockade or obstruction that prevents National Park Service employees or the public's access to any portion of Old Mine Road," ejecting Defendants from possessing any portion of the road, and requesting damages "for mesne profits, and for the value of the use and occupation of the land," and the cost of the suit.  (Am. Compl. ¶¶ 33-36.)  Count I is under federal common law and Count II is under state law (N.J. Stat. Ann. 2A:35-1 et seq.). (*Id.* ¶¶ 2, 33-36.)  On January 20, 2010, Defendants filed their answer to the Amended Complaint with a counterclaim for quiet title pursuant to 28 U.S.C. § 2409a.

On May 27, 2011, the Government's Motion was filed, requesting "an order requiring Defendants to immediately remove their blockade of Old Mine Road, enjoining Defendants from impeding the public's access to Old Mine Road, declaring that the United States owns and has

4

the right to control Old Mine Road, and restoring the public use and enjoyment of the historic Old Mine Road." (Pl.'s Br. 2.) On June 17, 2011, the Defendants' Cross Motion was filed.

**LEGAL STANDARD**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if a reasonable jury could return a verdict for the nonmovant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Once the moving party meets the initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). The court may not weigh the evidence and determine the truth of the matter but rather determine whether there is a genuine issue as to a material fact. *Anderson*, 477 U.S. at 249. In doing so, the court must construe the facts and inferences in a light most favorable to the nonmoving party. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991). The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325). If the nonmoving party "fail[s] to make a sufficient showing on an essential element of [its] case with respect to

5

which [it] has the burden of proof," then the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. at 323.

**DISCUSION**

    **A. Interest in Portions of Old Mine Road**

The Government asserts that the United States holds the ownership interest and rights in the portion of Old Mine Road that crosses the Hulls' Property. (*See* Am. Compl. ¶ 21, Ex. A.) The Government provides that Old Mine Road is a public road of historic significance.[2] The Government argues that "Defendants have denied the public of their right to traverse a public road and have obstructed the public's ability to enjoy the benefits of the Delaware Water Gap National Recreation Area." (Am. Compl. ¶ 24.) Further, they argue that by blockading this road, "Defendants have severely disrupted and hindered the ability of National Park Service employees from performing their duties" and "created safety concerns because open access to Old Mine Road is vital to public safety" as it provides an access route for emergency response vehicles. (Am. Compl. ¶¶ 25, 26; Pl.'s Br. 1.)

Defendants argue that they are bona fide purchasers of the Hulls' Property, including the relevant portion of Old Mine Road, free of any ownership interest or easement of the Government. (Defs.' Reply Br. 2-4, 19)[3] Defendants provide that the NPS may use the Road for administrative services. (Pl.'s Opp'n Br. 7.) At the center of this dispute is Ordinance 6-88, which Defendants claim vacated Sandyston's interest in the Road and as a result ownership reverted to the adjoining landowners, including their predecessor, Harker. (Pl.'s Reply Br. 8.)

---

[2] For example, Old Mine Road "accommodated defense needs during the French and Indian War by connecting a string of small forts and blockhouses built to prevent raids along the New Jersey frontier. During the Revolutionary War, General Gates marched seven regiments down Old Mine Road to meet General Washington prior to his crossing the Delaware. In the early 1800's, John Adams regularly crossed Old Mine Road when traveling from Congress in Philadelphia to his home in Massachusetts." (Am. Compl. ¶ 17.)

[3] Defendants assert that they "acquired with unburdened fee title to the relevant portion of Old Mine Road, pursuant to the legal principle in N.J.S.A. § 27:16-28(b)." (Defs.'Reply Br. 2-3.)

Statutory Interpretation

When interpreting an ordinance in New Jersey, a court must apply the same rules of statutory construction used to interpret the meaning of a statute. *Matlack v. Burlington Cnty Bd. of Chosen Freeholders*, 194 N.J. Super. 359, 361 (App. Div. 1984). The first step of statutory construction requires examination of the language of the ordinance. *See State of New Jersey v. Schad*, 160 N.J. 156, 170 (1999) (citing *Bergen Commercial Bank v. Sisler*, 157 N.J. 188, 202 (1999)).

A court must look at the ordinance or statute as a whole, and "not analyze any one section in isolation." *Massachi v. City of Newark Police Dept.*, A-5252-07T1, 2010 WL 4103696 *12 (N.J. Super. Ct. App. Div. Aug. 4, 2010); *see also In re Petition for Referendum on City of Trenton Ordinance 09-02*, 201 N.J. 349, 359 (2010) ("statutes must be read in their entirety; each part or section should be construed in connection with every other part or section to provide a harmonious whole."); *State v. Malik*, 365 N.J. Super. 267, 275-76, (App. Div. 2003) ("statute must be given generally accepted and ordinary meaning, and must be examined not only in their own contextual setting, but in relation to surrounding provisions in the statutory scheme. There is a need to keep in view . . . the structure of the statute, and the relation, physical and logical, between its several parts."); *Chasin v. Montclair State Univ.*, 159 N.J. 418, 427 (1999) ("a legislative provision should not be read in isolation or in a way which sacrifices what appears to be the scheme of the statute as a whole. Rather, a statute is to be interpreted in an integrated way without undue emphasis on any particular word or phrase and, if possible, in a manner which harmonizes all of its parts so as to do justice to its overall meaning.").

When language of a statute or ordinance may have more than one meaning or is ambiguous, the court may refer to the extrinsic evidence to interpret intent. "If the plain

language of a statute is not clear or if it is susceptible to more than one possible meaning or interpretation, [a] [c]ourt looks to extrinsic secondary sources to serve as its guide." *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 553 (2009). "The sources to which we look as aids in interpretation of a statute include legislative history, statements of the sponsor or sponsors of bills that were enacted, and, where relevant, a Governor's press release or . . . conditional veto message." *Massachi v. City of Newark Police Dept.*, A-5252-07T1, 2010 WL 4103696 *12 (internal quotations omitted). "Additionally, 'whatever the rule of [statutory] construction, it is subordinate to the goal of effectuating the legislative plan as it maybe gathered from the enactment read in full light of its history, purpose, and context.'" *Chasin*, 159 N.J. at 426-27 (quoting *State v. Haliski*, 140 N.J. 1, 9 (1995)).

Defendants argue that Ordinance 6-88, passed on September 1, 1988, "expressly 'vacated and extinguished' Sandyston's easement over the portion of Old Mine Road that traversed Harker's property and that of two adjoining landowners." (Defs.' Opp'n Br. 2.) However, to the extent that this Court finds that the statute is unclear on its face, or at least subject to interpretation this Court will look at the intent of Ordinance 6-88. This Court will review the extrinsic evidence, as well as the language of Ordinance 6-88, to determine the legislative intent.

*Extrinsic Evidence*

The portion of Old Mine Road that is in dispute was apparently constructed in 1800. In 1800, George Smith was the owner of the property currently owned by Defendants. Smith petitioned Sandyston Township to relocate a portion of Old Mine Road that went through his property. (Pl.'s Br. Ex. A, B.) Sandyston Township agreed, and the new portion of the road, which also crossed Smith's property, was opened and accepted by Sandyston Township. (Pl.'s

Br. Ex. A, B.) In 1800, Old Mine Road was referred to as a "public road." (Pl.'s Br. 4-5; Pl.'s Br. Ex. A.)

In a letter dated June 1988[4], Judy Pastor, of Sandyston Township, sent a letter to "Mr. Ring" (Richard Ring, Superintendent) of the NPS to notify him of

> Sandyston Township's intent to donate by deed, certain roads, which are portions of Old Mine and Kuhn Road, in the Township of Sandyston, to the National Park Service. As these roads currently represent an isolated area of local public roads, surrounded by lands and roads belonging to the National Park Service, it is no longer economically feasible for the township to continue providing maintenance for the private citizens retaining property ownership on said roads. Sandyston Township will cease all maintenance of said roads upon the effective date of the ordinance. It is the understanding of the Township Committee, that thereafter, maintenance, both summer and winter, will be performed by the National Park Service, and that private citizens residing on said roads, will have complete access for ingress and egress.

(Pl.'s Br. Ex. 5.)

After introducing Ordinance 6-88 in August 1988, on September 1, 1988, at the Sandyston Township Committee meeting, the Township Committee adopted Ordinance 6-88 after a public hearing. (Pl. Br. 6; Ex. E 1-2.) Defendants point out that the exact phrase in the schedule of the ordinance is "TO BE TAKEN OVER BY THE FEDERAL PARK SERVICE." (Pl.'s Br, Ex. F.) However, the language in Ordinance 6-88, including Schedule A, still reflects the intent of the Township to donate the relevant portions of Old Mine Road to the NPS.

By memorandum dated March 8, 1989 to the attention of Gerald Kirwan of the NPS, with the subject line "Donation by Deed of Portions of Roads, Sandyston Township, New Jersey," NPS Superintendent Richard Ring provided: "A significant portion of these roads [Old Mine Road and Kuhn Road] is part of the historical Old Mine Road." (Pl.'s Br. Ex. 6.) Further, Ring

---

[4] No day was included in the date of the letter.

9

stated "We are willing to accept the roads as they currently represent an isolated area of local public roads surrounded by lands and roads already belonging to the National Park Service." (*Id.*)  Ring also advised that the NPS Regional Solicitor had reviewed the ordinance and advised that the ordinance was "acceptable for our purposes of accepting a Warranty Deed for the donation." (*Id.*)

After passing Ordinance 6-88, a Quitclaim Deed dated January 18, 1989, from Sandyston Township purporting to deed portions of Old Mine Road to "the United States of America, in care of the National Park Service" was issued, but not filed until 2008. (Pl.'s Br. 1, 8; Pl.'s Ex. G).  The Government asserts that Sandyston owned fee simple title (not an easement) to Old Mine Road until it was transferred to the United States.[5] (Pl.'s Br. 3-4; Pl.'s Reply Br. Ex. A.)

After Sandyston executed the Quitclaim Deed, there was concern that Ordinance 6-88 was not effective and that the NPS could not accept a Quitclaim deed for the Road. (Pl.'s Br. Ex. 8, 11, 12.)  By letter dated April 6, 1990, attorney Christopher Quinn (for Sandyston), wrote to the attention of the title attorney regarding Ordinance 6-88. (Pl.'s Br. Ex. 11.)  In the letter, Quinn noted that as Ordinance 6-88 was "never recorded as is required by N.J.S.A. 40:67-2. . . . Further, the ordinance was never approved by the Commissioner of Transportation of the New Jersey Department of Transportation as required by N.J.S.A. 40:67-16.10." (Pl.'s Br. Ex. 11.) Further, "[b]y reason of the foregoing, specifically N.J.S.A. 40:67-16.9, it is clear that the

---

[5] Plaintiff asserts that Sandyston has fee simple ownership to the road, arguing that the former property owner conveyed to Sandyston fee simple ownership of his land in 1800. (Pl.'s Br. at 3-4; Pl.'s Br. Ex. A). Defendants argue that Sandyston owned an easement of the road, as the former owner only gave Sandyston a "right of way" in 1800. (Defs.' Br. at 29-31.) Based on the current record before this Court, Sandyston clearly had a documented interest in the Road; however, on its face it does not specifically state whether it was an easement or given as fee simple. (Pl.'s Br. Ex. A.)  Notably, it does not appear that anyone contested Sandyston's ownership of the relevant portion of Old Mine Road in fee simple before or after the passage of the vacation ordinance until the present, and at various points the Road was used by the public and the NPS.  The specific issue of whether Sandyston's rights pertained to fee simple or easement are only discussed tangentially by the parties in the submissions.  This Court will focus on the transfer of interests, as the key issue currently before the Court is whether the transfer of "whatever interests" Sandyston had was validly conferred to the Government.

ordinance adopted by the Township is not effective to vacate the road in question." (*Id.* Ex. 11 at 2.)[6]

The letter dated August 16, 1990, from Brian R. Donnelly, Esq. to Barbara Zwalley, Land Resource Officer of the NPS, conveyed one attorney's belief that "upon the passage of the ordinance vacating these roadways [Old Mine Road and Kuhn Road], the land reverted to the adjoining landowner in fee." (Pl.'s Br. Ex. 8.) Donnelly's interpretation was that the statute only addressed "administrative matters" regarding the NPS, and he suggested that the NPS obtain a "Quit Claim Deed" from the adjoining land owners or obtain easements from the adjoining land owners. (*Id.*)

In a letter dated September 14, 1990, Superintendent Ring wrote that: "Since it is the title company's opinion that with the passage of Sandyston Township Ordinance 6-88, title to portions of the subject roads intended to be donated to the National Park Service reverted to the adjoining landowners, we cannot proceed with the acceptance of the donation of these roads by the Township." (Pl.'s Br. Ex. 9.) Contrary to Defendants' assertions, the record does not reflect that the NPS was unwilling to accept the deed for Old Mine Road; rather, the NPS was concerned about how the process was carried out and whether they would have legal right or ability to accept the deed as a result. (Defs.' Opp'n Br. 26; Pl.'s Br. 37.)

Attorney Christopher Quinn, however, clearly was of a different opinion and by letter dated August 28, 1990, referred to Donnelly's "unsupported conclusion" that he believed that the statute did not "mean what it clearly says." (Pl.'s Br. Ex. 10.) As a result of the comments of Donnelly in 1990, the NPS proceeded to try to "correct the situation" and obtain deeds from the three adjoining land owners (Harker, Lennington, and Dodd). (Pl.'s Br. 37). In an abundance of

---

[6] The parties debate the significance of Ordinance 6-88 not being recorded, but both rely on its validity to a certain extent. If Ordinance 6-88 was not valid by nature of not being recorded, Sandyston still would have passed its interest to the Government via the Quitclaim Deed, dated January 1989, that was not recorded until 2008.

11

caution, and as Quinn indicated to "put this matter to rest once and for all," the attempt was made to obtain "Quitclaim Deeds for the right-of-way in question from the abutting owners." (Pl.'s Br. Ex. 12.) Subsequently, the NPS attempted to obtain Warranty Deeds from the three landowners whose property adjoined Old Mine Road.

The letters sent to the landowners, seemingly acknowledging ownership rights by the adjoining landowners, clearly complicate this matter, but they are not deeds. As discussed, General Warranty deeds were obtained from two of the three owners as the NPS proceeded with caution hoping to easily eliminate any doubts about the Government's interest in the relevant portions of Old Mine Road. The mistaken interpretation of the Ordinance relied upon by the NPS and the subsequent acts of the NPS employees do not relieve the Government of its interest in Old Mine Road. *See Twp. of Middletown v. Simon*, 193 N.J. 228, 241 (2008)("Once an owner of land makes an offer of dedication, that offer is "complete and irrevocable so far as the dedicator is concerned." The offer remains in place until the public authority accepts or rejects it.); *Kingman Reef Atoll Invs., L.L.C. v. United States,* 541 F.3d 1189, 1199 (9th Cir. 2008)(discussing the position that the United States does not abandon its claims to property by inaction or the mistaken comments or actions of certain employees); *United States v. California*, 332 U.S. 19, 40 (1947)(". . . .officers who have no authority at all to dispose of Government property cannot by their conduct cause the Government to lose its valuable rights by their acquiescence, laches, or failure to act.").

*Intent and Effect of Ordinance 6-88*

As noted, one of the key issues before this Court with regard to resolving the dispute over Old Mine Road, is interpreting Ordinance 6-88 and the legislative intent. Ultimately, the court's "task in statutory interpretation is to determine and effectuate the Legislature's intent."

*Massachi,* 2010 WL 4103696 *12 (quoting *Bosland*,197 N.J. at 554); *Bosland*, 197 N.J. at 554 ("our 'primary task . . . is to effectuate the legislative intent in light of the language used and the objects sought to be achieved'"); *Bd. of Educ. of Sea Isle City v. Kennedy*, 196 N.J. 1, 12 (2008)("Our goal when construing a statute is to discern and fulfill the Legislature's intent"); *Lettenmaier v. Lube Connection, Inc.*, 162 N.J. 134, 144, 741 A.2d 591, 596 (1999)("Our ultimate goal in construing a statute is to ensure that the Legislature's plan is effectuated.")

Further, "[w]here the drafters of a statute or ordinance did not consider or contemplate a specific situation, a court should interpret the enactment consonant with the probable intent of the draftsman had he anticipated the situation at hand." *Matlack*, 194 N.J. Super. at 361(internal citations omitted). Moreover, "if an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute is 'fairly possible,' [courts] are obligated to construe the statute to avoid such problems." *MAG Realty, LLC v. City of Gloucester City*, CIV. 10-988 RBK/AMD, 2010 WL 3210441 *14 (D.N.J. Aug. 12, 2010) (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 299 (2001).

Defendants set forth detailed and well-organized arguments, but clearly the intent of Ordinance 6-88 was for Sandyston Township to donate Old Mine Road to the "Federal Park Service" (NPS). Defendants claim that "even if that were Sandyston's *original* intent, as may be suggested by some of the Sandyston Township Committee minutes, that clearly was not Sandyston's *ultimate* intent as reflected by the usage of the words 'vacated and extinguished' and the whereas clauses, which explicitly identify Sandyston's intent." (Defs.' Reply Br. 10, n.6. (emphasis in original).)

The word "vacate" in Ordinance 6-88 cannot be read or interpreted in isolation, particularly if it would lead to a result that is clearly contrary to the legislative intent. *See Schad*,

13

160 N.J. at 173 ("Statutory canons are suggestive tools that should not lead to an interpretation that contradicts a common sense understanding of the statutory language.")

Ordinance 6-88 was effective to the extent that it conveyed Sandyston's plan or interest in transferring Old Mine Road to the Government, but not to the extent that it would go against the public's interest. *Howell Props., Inc. v. Twp. of Brick*, 347 N.J. Super. 573, 576 (N.J. Super. 2002) (holding ordinances to be unlawful exercise of legislative power "because the vacation of the streets do not service the 'public interest.'") As discussed in *Howell Props., Inc. v. Twp. Brick*, "the controlling criterion under the statute is whether the vacation of the street will serve the 'public interest'" *Id.* at 580 (citing *Pyatt v. Mayor & Council of Dunellen*, 9 N.J. 548 (1952).) Sandyston intended to act in the public interest by removing a financial burden for the maintenance of Old Mine Road from the township *and* turning over its interest in the Road to the Government, in care of the NPS, so that the historic road was still available to the public. Potentially losing interest in part of a historic road and limiting access by the public and the NPS cannot be found to be in the "public interest."

<u>Recording Issues</u>

Two main issues complicate this analysis. The first is that Ordinance 6-88 was not recorded. The second is that the Quitclaim Deed the Government received from Sandyston was not filed until 2008.

N.J.S.A. 40:67-2 provides,

> A copy of any ordinance or resolution ascertaining and establishing the boundaries, laying out, accepting the dedication of . . . or changing in any manner the location of any street or highway . . . together with a map showing the location, bounds and dimensions thereof, shall, after the passage of the same, be filed in the office wherein conveyances of lands are recorded in the county in which the municipality is situated.

N.J. Stat. Ann. § 40:67-2.[7]  Defendants cite *Cox v. RKA Corp.*, which provides the following language in relevant part: "the underlying purpose of the recording statutes…'leads to the conclusion that [they were] designed to compel the recording of instruments affecting title, for the ultimate purpose of permitting purchasers to rely upon the record title and to purchase and hold title to lands within this state with confidence'." 164 N.J. 487, 496 (2000) (quoting *Palamarg Realty Co. v. Rehac*, 80 N.J. 446, 404.)

The Government did not record its deed until 2008; however, Defendants were aware that there was at least an issue or debate associated with the portion of Old Mine Road that ran through their property.  (*See* Defs.' Statement of Facts ¶¶ 20, 22, 24; Pl.'s Br. Ex V at 22:3-6; Pl.'s Br. Ex W at 9:21-10:1.)  Although the Defendants provide that they "had no knowledge of the existence of the January 18, 1989 quitclaim deed that was tendered by Sandyston . . . not recorded until June 17, 2008, several months after the Hulls purchased the Hulls' Property, the Defendants were aware of the long standing issue or "technical problem" stemming from Sandyston's intent to transfer its interest in the Road to the Government.  (Defs.' Statement of Facts ¶¶ 20, 22, 29; Pl.'s Br. Ex. 13, Ex. G.)  The controversial letters dated September 1993, from Superintendent Rector purporting to recognize adjoining landowners' ownership of the Road noted the intent of Sandyston to donate Old Mine Road to the NPS, but that there was a "technical problem."   (Defs.' Statement of Facts ¶ 22; Pl.'s Br. Ex. 13.)  Defendant Matthew Hull has stated that he read this letter in or around 1999. (Defs.' Statement of Facts ¶ 22.)

---

[7] Plaintiff appropriately points out that N.J. Stat. Ann. §27:16-28 (1984) refers to county roads while N.J. Stat. Ann. § 40:67-1 (1992) refers to municipal roads. However, the difference in language between the two statutes does not alter this Court's ruling on the motion for summary judgment. N.J. Stat. Ann. § 27:16-28 (1984) ("Any road or portion thereof owned by any county or under the control of any county governing body may be (a) discontinued as a county road and returned to the jurisdiction and control of the municipality wherein the same is situated; or (b) vacated and abandoned as a public highway."); N.J. Stat. Ann. § 40:67-1 (1992) ("The governing body of every municipality may make, amend, repeal and enforce ordinances to…Establish, change the grade of or vacate any public street.")

There are several issues regarding the recording of the deed and of Ordinance 6-88, however, none of them concern an issue of material fact to preclude summary judgment.[8] In light of the discussion regarding interest in the Road and the material undisputed facts, this Court notes the following key points: 1) Sandyston Township had an interest in Old Mine Road, 2) Sandyston Township intended to transfer or donate its interest in Old Mine Road to the United States (specifically the "Federal Park Service" or NPS), 3) Sandyston was required to act in the public interest and sought to do so, and 4) Sandyston did provide the NPS with a deed. Sandyston Township clearly intended to donate the Road to the NPS and the NPS wanted to accept the Road, and ultimately filed the deed documenting the transfer.

This case is complicated by its unique fact pattern, which this Court must take into account when reaching its conclusion. Material facts are not in dispute and a trial would not provide this Court with further clarification of the legal issues before it. The extrinsic evidence in the record regarding Ordinance 6-88 is essential to the resolution of this matter. Given the record before this Court, the original intent of the Ordinance 6-88 and the provision of a deed to the relevant portions of Old Mine Road being proffered to the NPS by Sandyston Township,

---

[8] Notably, regarding Defendants' procedural arguments against Plaintiff's position on Ordinance 6-88 being time-barred due to the statute of limitations and failure to plead, this Court finds that Defendants satisfy the Rule 8(a)(2) pleading requirements and the argument is not barred.

equity dictates that the property belongs to the NPS. This Court finds that the Government is entitled to the relevant portions of Old Mine Road that traverse the Hulls' Property.[9]

## B. Injunctive Relief

Plaintiff requests "a permanent injunction, Ordering Defendants to remove any blockade or obstruction that prevents National Park Service employees or the public access to any portion of Old Mine Road." (Compl. ¶ 34.)

The Third Circuit has determined that "[i]n deciding whether to grant a permanent injunction, the district court must consider whether: (1) the moving party has shown actual success on the merits; (2) the moving party will be irreparably injured by the denial of injunctive relief; (3) the granting of the permanent injunction will result in even greater harm to the defendant; and (4) the injunction would be in the public interest." *Shields*, 254 F.3d at 482; *see also Gucci Am., Inc. v. Daffy's Inc.*, 354 F.3d 228, 236-37 (3d Cir. 2003). In the instant matter these elements can be met, as demonstrated by the proceeding discussion. However, as Defendants did not have a right to obstruct the Government or public use of the portion of Old

---

[9] Defendants assert that even if the Government owns an interest in or to the relevant portion of Old Mine Road, the Government would be estopped from enforcing its interest against the Defendants. The elements of an equitable estoppel claim include the following: "1) a false representation or wrongful misleading silence; 2) an error in a statement of fact and not in an opinion or statement of law; 3) person claiming the benefits of estoppel must be ignorant of the true facts; and 4) person claiming estoppel must be adversely affected by the acts or statements of the person against whom estoppel is claimed." *Fredericks v. C.I.R.*, 126 F.3d 433, 438 (3d Cir. 1997); *see also Heckler v. Cmty. Health Serv. of Crawford County, Inc.*, 467 U.S. 51 (1984). Notably, estoppel requires a showing of affirmative misconduct on the part of the Government. *Fredericks*, 126 F.3d at 438; *United States v. Asmar*, 827 F2d 907, 912 (3d Cir. 1987). The party claiming estoppel against the United States has the burden of proof. *Asmar*, 827 F2d at 912. As demonstrated by the analysis herein, Defendants cannot meet the elements for equitable estoppel. This is in part because 1) although there were mistakes, Defendants cannot meet the burden of proof regarding demonstration of affirmative misconduct by the Government as it relates to the Government's interest in Old Mine Road and 2) Defendants were not actually "ignorant of the true facts," although arguably there were mishaps and confusing circumstances. The only reference to affirmative misconduct against the Government is with regard to John Donahue of the NPS and "threats" made to have Defendants remove the gates they put across Old Mine Road. (*See* Defs.' Br. 38.) Also, "assuming estoppel can ever be appropriately applied against the Government," the detriment to party raising the argument must be severe. *Heckler*, 467 U.S. at 66.

Mine Road in dispute, Defendants' obstruction of the Road with a gate should not have taken place in the first place. Thus, Plaintiff is entitled to injunctive relief.[10]

**CONCLUSION**

For the reasons stated above, this Court grants the Government's Motion and denies Defendants' Cross Motion.

<u>s/ Susan D. Wigenton, U.S.D.J.</u>

| | |
|---|---|
| Orig: | Clerk |
| cc: | Parties |
| | Magistrate Judge Arleo |

---

[10] This Court notes that Plaintiff has not provided submissions related to damages, and thus, such relief is not addressed in this Opinion.