

**U.S. Department of Justice**

United States Attorney
District of New Jersey
*Civil Division*

---

WILLIAM E. FITZPATRICK
ACTING UNITED STATES ATTORNEY

*Michael E. Campion*
*Assistant United States Attorney*

*970 Broad Street, Suite 700*
*Newark, NJ 07102*
*michael.campion@usdoj.gov*

*main: (973) 645-2700*
*direct:(973) 645-3141*
*fax:   (973) 297-2010*

November 10, 2017

By ECF

Hon. Susan D. Wigenton
United States District Judge
King Fed. Bldg. & United States Courthouse
50 Walnut Street, P.O. Box 999
Newark, New Jersey 07101

   Re: <u>United States v. Hull, et al.</u>  No. 09-1303 (SDW) (LDW)

Dear Judge Wigenton:

  The parties in this action respectfully submit this joint status letter pursuant to the Court's Order dated November 2, 2017.  Plaintiff United States of America is represented by the United States Attorney for the District of New Jersey.  Defendants Matthew Hull, Michelle Hull, and Aaron Hull ("Defendants") are represented by Spencer B. Robbins, Esq.

### JOINT STATEMENT

  On August 11, 2017, the United States brought a motion to enforce the settlement of this action.  Defendants request until December 20, 2017 to file an opposition to that motion.  The United States does not consent to this request.

### PLAINTIFF'S STATEMENT

  In August of this year, the United States moved to enforce the settlement of this matter.  Although Defendants' response was due on August 22, 2017,

Defendants now ask – nearly three months after their opposition brief was due – for an extension of time to oppose that motion. The United States does not consent.

Additionally, it appears from "Defendants' Statement" that Defendants seek to re-litigate an issue that the Court previously decided – that is, the Court's January 24, 2012 ruling the United States owns the property interest to the previously-disputed portion of Old Mine Road. In fact, over five years ago, Defendants already made – and lost – a motion for reconsideration of that very decision. The Federal Rules of Civil Procedure do not permit Defendants to take a third bite at the apple by making a second motion for consideration, let alone five years after the denial of Defendants' previous motion for reconsideration. Without any basis in law to re-litigate this previously-decided legal issue and already settled civil action, Defendants' position is frivolous.

Before the parties settled this matter, on January 24, 2012, Judge Wigenton ruled in favor of the United States on cross motions for summary judgment. Among other things, Judge Wigenton held that the United States owns the property interest to the previously-disputed portion of Old Mine Road. After denying Defendants' motion for reconsideration, the Court then ordered the parties to trial on the issue of damages and a determination on the type of property interest (*e.g.*, fee simple or some other possessory interest) held by the United States. Soon thereafter, the parties attended a final pretrial conference and then settled the action on the record before the Court.

On January 4, 2013, the Court asked each of the Hull defendants – on the record – whether they had "an opportunity to listen to the terms I recited, and are those terms that you have agreed to settle these claims?" Notably, each of the Hull defendants answered "yes." Furthermore, the Court asked Defendants if they "had enough time to consider the agreement" and whether they were "able to fully and fairly come to this settlement today?" Again, each Hull defendant answered "yes." Lastly, the Court asked Defendants if they are "satisfied with the representation you've received by your lawyers today?" Once more, each Hull defendant answered "yes."

Because Defendants did not comply with the terms of the settlement, the United States moved to enforce the settlement on August 11, 2017. Defendants' opposition brief was due on August 22, 2017. Now, nearly three months later, Defendants have requested an extension of time to submit an opposition brief.

Although they have been in possession of a survey of the previously-disputed portion of Old Mine Road for nearly four years, Defendants now claim to have an objection to the survey. Pursuant to the terms of the on-the-record settlement, the United States – at its own cost – provided a completed survey of the road to Defendants on January 30, 2014. Defendants have not explained why they waited ***nearly four years*** to provide any substantive comment to the survey.

Defendants also appear to oppose the motion to enforce the settlement by arguing that the Court erred in ruling that the United States owns the previously-disputed portion of Old Mine Road. Again, this issue was fully litigated. Over five years ago, the parties made cross motions for summary judgement. The Court ruled – as a matter of law – that the United States owns the relevant property interest to the road. Then, subsequently, Defendants made a motion for reconsideration. The Court denied that motion. Notably, in all aspects of the litigation concerning the ownership interest of the previously-disputed portion of the road, Defendants were well represented by Mountain States Legal Foundation, as well as a local and well-respected New Jersey litigator who specializes in property disputes. Defendants cite no authority to re-litigate the Court's decision, let alone re-litigate it ***five years*** after the Court rendered its decision and ***nearly four years*** after the parties settled this action.

Rather, Defendants appear to instead argue that the Court should re-open this settled matter and allow Defendants to re-litigate the Court's prior decision against them simply because Defendants retained new counsel who purportedly identified new issues.[1] Of course, Defendants cite no authority to support such an

---

[1] Defendants suggest that the Court should reconsider (five years after Defendants made – and lost – a motion for reconsideration) because the Court made the decision without the input of Defendants' expert witness. Of course, Defendant could have presented expert evidence five years ago, but they chose not to do so. In fact, in cross-moving for summary judgment on June 17, 2011, Defendants represented to the Court that it had sufficient basis to rule on the ownership interest of the road property *without expert evidence.* Now, years after the Court made its legal determination and years after the settlement, Defendants completely contradict their position and argue that expert evidence is now necessary. Finally, in the Proposed Joint Final Pretrial Order, which was filed on December 6, 2012, each party identified expert witnesses. Yet, Defendants chose to settle this matter after identifying their expert witness.

argument. To the contrary, if an unhappy litigant could simply hire new counsel to re-open previously decided or settled matter, countless of unhappy litigants would hire new counsel and flood the courts with requests to re-examine stale – and several-years-old – matters.

In sum, nearly six years have passed since the Court held that the United States owns the property interest to the previously-disputed portion of Old Mine Road. Nearly five years have passed since the parties settled all remaining issues. Nearly four years have passed since the United States delivered the survey to Defendants. And nearly three months have passed since Defendants' opposition was due to the United States' motion to enforce the settlement. In light of the substantial passage of time since these matters have closed, the Court should deny Defendants' untimely request for an extension of time to respond to the United States' motion to enforce the settlement.

### DEFENDANTS' STATEMENT

This case involves a claim that the United States filed stating that they owned a portion of a dirt road that goes through property owned by the Hulls, private citizens. The Hulls objected to the United States claim. There is an Order from Judge Wigenton entered after a Motion for Summary Judgment in 2012. A survey was prepared approximately a year later by the United States which was not agreed to by the Hulls's. No action has taken place in this matter until the United States brought a motion to enforce an alleged settlement that the parties entered into. Defendants, the Hulls, retained new counsel and want to oppose the motion and need time to respond due to new information. On November 2, 2017, Judge Wettre, scheduled a status conference to discuss the matter and after meeting with the parties directed us to write a joint letter to your Honor describing our positions. Defendants requested until December 20, 2017 to file their response to the motion as they were waiting for the finalization of a title expert's report.

---

In their statement, Defendants raise numerous factual issues with which the United States disagrees. Because those issues are not relevant to the United States' motion to enforce the settlement or its objection to Defendants' three-months-late request for an extension, the United States does not respond to those factual disagreements.

4

The Hull's have been previously represented by prior counsel and asked Spencer B. Robbins, Esq. to represent them due to what they believe were ineffective counsel and misunderstandings with past counsel.

We now have been provided documents that a Summary Judgment was granted in favor of the United States dealing with a portion of a roadway that runs through the Hull's property.   A number of issues still exist with regard to this road and the Defendant's have not made an agreement with a survey prepared approximately 4 years ago.

With due respect to the Court, upon getting involved in this matter and not having any files to review and simply listening to the Hull's contentions, Defendants hired Joseph Grabas, a well qualified expert on land and title issues. He has provided a preliminary report to the Hull before a response could be made to the government's motion on this matter.

Not being aware that the court had ruled on the issue of title to a portion of Old Mine Road, Sandyston, New Jersey, he went back to before 1800.   Although his report is preliminary and which will be completed shortly, his opinion is that the Hull's own the property on which this dirt road lies.
This suit deals only with a portion of a dirt road that runs through the Hulls property, a copy of a map depicts the road.

My preliminary investigation includes discussions with the Hulls who have been on the property for many years.   They purchased the subject property in 2007 from the Estate of Eno Harper.   The Hulls used to work on the property for Mr. Harper since they were young kids, so they are quite familiar with the land.

Based on information from the Hulls, the road is simply a dirt road that Mr. Harper used personally to get through his property.   It was not used by outside people and was only maintained by him (or the Hulls for him).   Frankly, there is no use to others, which brings up the question of why the government is pressing this matter.    After the Hulls purchased the property they were visited by a park ranger named Brad Clausen, who came to them and stated they wanted to maintain the dirt road as usual.   Of course the Hulls questioned him as the road was never maintained by anyone outside them since the road was closed to everyone but the Hulls.

Sometime after that lawsuits commenced claiming the Hulls were blocking the use of the road and property which they owned.  From the review of a preliminary report prepared for me, I will advise the Court that it appears the property underlying Old Mine Road, Sandyston Township, New Jersey is owned by the Hulls.  There is no basis for the government or any other party to claim ownership of the road and there is no easement for use of the road.  So, in fact, the case should have been dismissed.
Based on information supplied, it appears the chain of title goes back to 1796, when George Smith first acquired the property.  It appears that George Smith first petitioned for the opening of the Old Mine Road across his property in 1800.

The Road Return was recorded in the Sussex County Clerk's Office on August 31, 1800 in Road Book A page 267.   A Road Return is the document "returned" by the Commissioners after they had surveyed and laid out the location of the road.  Usually there is also a petition made by adjoining and concerned citizens, but no such petition was found in the Road Books.   Smith apparently paid for the entire expense of building the road.   This signifies a dedication of the road for use, but does not constitute a conveyance of the fee title to the road bed.    There after one of the deeds in the chain of title even mentions Old Mine Road and not a mention of the public right to use the road.

It is a well founded principle that when a road is dedicated for public use by a property owner, the municipality does not acquire a fee simple absolute in the bed of the street.   Instead the municipality acquires an easement for the benefit of the public.

Further there is no evidence of condemnation proceedings against George Smith.   George Smith paid for the entire cost of building and opening the road and received no compensation.

On September 1, 1988, the Sandyston Township Committee passed Resolution No. 6-88 voting to "Vacate and Extinquish" the public righs in and to Old Mine Road, as "there appears to be no public need for a public road" and would "cause a financial burden on the Township without any beneficial return to the public.

This action terminated and abandoned any rights which the Township may have possessed in and to Old Mine Road.

Deed from Sandyston to the USA:

On June 17, 2008 a deed was recorded in Deed Book 3204 page 846, between the Township of Sandyston and the United States of America containing three tracts purporting to be the portions of Old Mine Road previously vacated in 1988.   I am advised this deed is deficient in several ways by our expert.

I am told that it is a Quit Claim Deed and therefore can only convey whatever interest , if any that Sandyston had in Old Mine Road.   As mentioned previously, the Township vacated its rights to same in 1988 under Resolution No. 6-88.   Therefore Sandyston did not possess any rights in 1989 when the deed was executed.

Second, the deed was held off record for 19 years, which is unusual.   The US Solicitor's report of September 7, 1989, which was issued after the Quit Claim deed was executed, reveals that the Solicitor corrected believed that it appeared that Sandyston may have no interest to convey.

The National Park Service reaffirmed this position in subsequent correspondence dated September 14, 1990 (they stated they could not proceed with the acceptance of the donation of these roads and a further letter ofOctober 16, 1990 wherein they needed an ordinance and other quit claim deeds which meant that the NPS and Solicitor understood that the Township of Sandyston had no title to give.   There are other issues being investigated.   It is the United States' policy not to accept Quit Claim Deeds.   There in fact was a letter from the National Park Service dated March 8, 1989 to Erma Gormley, May and March 4, 1996 to Charles C. Lennington showing that a General Warranty Deed was required.
Further, the Quit Claim deed in questions was signed by a George B. Harper, Jr. and witnessed by Judith Pastor.   These individuals are not identified by their public position as required.   The acknowledgement taken by Carol J. Ayers, Notary, is not the proper form of acknowledgement for a deed from a municipality. Additionally, based on information and belief, no Township Resolution authorizing the execution of this document has been found in the Township's Clerk's records.

Although, it appears that your Honor has already made a decision on the ownership of property but it was without expert testimony.   Defendants humbly request that by filing a response to the present motion they could file a cross-motion for reconsideration now that an expert in title issues will be providing his report.  I understand the difficulties on our position, but simply trying to seek clarifications.

Other issues still remain.  The roadway is 33 feet wide and the portion of the road the government believes they have is only 24 feet and not shown on the survey.  Underneath the roadway is a septic field for the Hulls and determinations as to how it will be maintained and access to it.  The government wants to plow and grade, yet they have caused damage in the few times they have done that.

We are also now cognizant to the fact that the Hull's agreed to settle the case, but that was because they were advised that they would only settle if in fact they did not own the property.

***

Defendants' counsel, Spencer Robbins, Esq., has reviewed and joins in the "Joint Statement" portion of this letter.  Mr. Robbins also drafted the "Defendants' Statement" portion of this letter.  We thank the Court for its attention to this matter.

        WILLIAM E. FITZPATRICK
        Acting United States Attorney

By:   */s Michael E. Campion*
      MICHAEL E. CAMPION
      Assistant United States Attorney