## Survey

Gary Worley, Surveyor for the US attorney, did not perform the instrumentation on this survey. Worley has certified someone else's work to the court.

Worley's survey was sent unsigned and without raised seal to Hull by the US attorney through Steven Lechner of Mountain States Legal Foundation with the US attorney asking Hull for a decision on a non-legal document. A signed, legal document with raised seal was not received until the Hulls insisted on the survey being a legal document for review.

The Hansen Report for Hull critiqued the unsigned Worley survey. This report was forwarded to Steven Lechner, Hulls attorney, who informed the US attorney, Michael Campion, through email of the report. The emails indicate Lechner was sending the Hansen Report to Michael Campion, US attorney. Emails indicate Campion's objections to the Hansen Report. In declaration, Campion now states the Hulls never objected.

Why doesn't the US use the quitclaim deed as final ownership? If the relevant section of Old Mine Road belongs to the US, why do they need the Hulls to sign consent decree?

The survey does not show US ownership of the relevant section of Old Mine Road. The survey shows the Hulls ownership of the relevant section. The survey is a sub-division of Hulls' property, not US property. There is no US lot and block number on the Worley survey.

Issues with and/or missing from the survey:

1. No stated lot and block numbers for property owned by the US. Question: If Hull does not agree to consent decree, the survey cannot be accepted for filing at Sussex County Hall of Records without a lot and block number as a property owned.
   a. The quitclaim deed has already been filed (6/16/2008). Why is a survey now needed?
   b. In recent motion the US attorney states they will ask the court to enforce the taking of the entire width of the Old Mine Road. Haven't they already claimed they own it?

2. 1988 Harold Pellow survey map drawn for Sandyston Township by township engineer states on face the relevant section of Old Mine Road is a right of way. Note: This survey was entered into evidence.

3. Missing – Hulls driveway from Kuhn Road is missing on Worley's survey for consent decree. (requirement in a survey)
   a. Donahue threatened to close ingress/egress on other sections of Old Mine Road leading to Hulls property. This is why Sandyston Township during subdivision requested the original entrance to Hulls property from Kuhn Road to also be a right of way through Matt Hull's property for Aaron Hull's subdivision.

4. Missing - Kuhn Road is missing on Worley's survey for consent decree. (requirement on a survey)

5. What lot and block number is the new 24 foot wide road being sub-divided from? (requirement in a survey)

6. Worley now states on the survey drawn for consent decree the relevant section of Old Mine Road is a

Case 2:09-cv-01303-SDW-LDW   Document 116-3   Filed 11/28/17   Page 2 of 4 PageID: 1335

former right of way. (Stating " former right of way "is a requirement in NJ on a survey if the road has been abandoned)

7. Missing – Worley does not show on the survey drawn for consent decree, ingress/egress to Hulls' fields from the relevant section of Old Mine Road. (requirement in a survey for accesses)

8. Technically half of lot 9, block---- could be blocked from Hulls' use by US as per the Worley survey (Access is not shown).

9. Survey does not recognize the 9 foot width, 2100 foot +/- length of road being conveyed to Hull by a general warranty deed from US.
a. 9 foot of width contains Hulls well
b. Is this 9 foot width of road deleted from the 33 foot wide road because the US cannot own Hulls well? (Is the US owning Hulls' well a violation of US Title Standards?)
c. Any property received by Hull from the US must be by general warranty deed from the US Realty Office DOI for Hulls' future protection.

10. Worley's survey for consent decree fails to show Matt Hull's septic system. Hull's septic spans the full 33 foot width of the former road bed. (Is owning Hulls' septic a violation of US Title Standards?)
*INCOMBEDSD*

11. # 9 and 10 are questions that the US Realty Office DOI, need to answer.

12. If the US owns this property as per Judge Wigenton's opinion, the US must provide a proper general warranty deed to Hull. (*N)* Hulls' opinion: The US attorney with this survey by law cannot convey any property from the NPS within the DWGNRA to a private owner, at least not without congressional approval.)

13. Worley fails to show Hulls' underground utilities.

14. Worley's survey states "former right of way" along the 33 foot delineation line. What legal action in the past is Worley referring to establish this road as a "former right of way"?

15. Recent discovery of a survey drawn by Worley in January 2011 is inconsistent with his survey of 2014.
a. In the 2011 survey, Worley shows the relevant section of Old Mine Road as a right of way.
b. In the 2011 survey, Worley doesn't recognize the quitclaim deed recorded on 6/17/2008.
c. In the 2011 survey, Worley shows Hulls' gates outside of Hulls' property on US property.
d. In the 2011 survey, Worley does not show the relevant section as US property.
e. In the 2011 survey, Worley does not show the relevant section as Sandyston's property.
f. In the 2011 survey, Worley has drawn Hulls lot line to the center of the road.

2

g. The 2011 Worley survey has just recently been discovered by the Hulls. This survey was not entered into evidence by the US.

h. As a surveyor, Worley's credibility is in serious question. As Worley stated to Glenn Hull in recorded conversation between him, Worley and Branley on Aaron Hull's property – that they were trying to figure out how to show this as US property. !!!! Serious credibility problems. Why was Branley, an administrative assistant who filed the quitclaim deed, conspiring with a surveyor creating evidence for court?

16. In the past the NPS has closed roads during government shutdowns or on a whim. What protection is the NPS willing to give Hulls for ingress/egress guarantees?

17. The Holenstein Report prepared for the US attorney but not entered into evidence, states the taking of the road will leave a net acreage from the whole acreage.

18. The quitclaim deed after being recorded on June 17, 2008, with the sale price and a NJ real estate transfer tax was never sent to the Sussex County Board of Taxation for property ownership change on tax maps and indexing. AS PER NJ AC. It could not have been sent on. There was no lot and block number on the quitclaim deed, but yet a sale price and a realty tax is affixed in the recording stamp. CAP.

19. Judge Wigenton rendered her opinion based on the quitclaim deed instrument. For some reason, the US attorney doesn't feel this instrument is adequate for US ownership, although it was adequate enough for the US attorney to start this civil suit. The US attorney now asks for a consent decree with the Hulls agreeing to the Worley survey. The US attorney in motion has asked the court to enforce the consent decree if the Hulls don't agree to sign consent decree. Would this motion require a new survey WITH or would this motion force the US to use the quitclaim deed? NEITHER ACD OR W.S. ARE SUITABLE FOR ACC WITHOUT A LOT# U.S. ARE Can the Worley survey be accepted for filing at Sussex County Hall of Records without Hulls' signatures L#+# agreeing to property transfer in this survey? It appears that this survey without Hulls' agreement would #+ have to state a US lot and block number to be accepted for filing at Sussex County Hall of Records. Especially since the US would be giving US property to the Hulls. A subdivision must state, "Part of lot... block......".

Conclusion:

The Hulls state that their attorneys stated:

1. The US owns the road.

2. The Hulls were told by their attorneys that Campion was asking for jail time for the Hulls for damages to US property and hundreds of thousands of dollars in fines.

We, the Hulls', made the decision to move to consent decree under duress. We were facing the threat of jail time and heavy fines in damages to US property while still suffering from the reality of the US marshalls surrounding our houses to serve this civil suit. The marshalls were told by Mr. Campion's

3

client that, "the Hulls would be in trees with guns". This nightmarish situation with the US marshalls weighed heavily upon our decision that jail time could be a real possibility and we'd be separated from our young families. If Mr. Campion's client was capable of sending the US marshalls with the impression that we'd be in trees with guns, then he was certainly capable in our minds of forcing jail time and monetary fines on us.

Now we realize these threats were to force us to relinquish private property. And we still consider ourselves having been threatened by the US government.

4