```
                  UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW JERSEY
 _____

UNITED STATES OF AMERICA,

          Plaintiff,              CIVIL ACTION NO.:
                                  2:09-cv-01303-SDW-LDW
          -vs-

MATTHEW HULL, MICHELE C.          TRANSCRIPT
HULL, and AARON HULL,                  OF
                                  **ORDER TO SHOW CAUSE**
          Defendants.
                                      Pages 1 - 19
 _____

         United States District Court of New Jersey
         50 Walnut Street, Newark, New Jersey 07101
                  Thursday, March 1, 2018
                  Commencing at 11:14 a.m.



B E F O R E:

          THE HONORABLE SUSAN D. WIGENTON,
             UNITED STATES DISTRICT JUDGE
```

_____

Certified as True and Correct as required by Title 28, U.S.C., Section 753
   /S/ Joanne L. Sekella, RMR, CCR, CRCR, RPR

Joanne L. Sekella, Official Court Reporter
              (908) 310-1177
              sekella@gmail.com

*United States District Court*
*Newark, New Jersey*

```
 1  A P P E A R A N C E S:

 2      UNITED STATES ATTORNEY'S OFFICE
        CRAIG CARPENITO, UNITED STATES ATTORNEY
 3      BY:  MICHAEL E. CAMPION, CHIEF, CIVIL RIGHTS UNIT
             JORDAN MILOWE ANGER, ASST. UNITED STATES ATTORNEY
 4      970 Broad Street
        Suite 700
 5      Newark, New Jersey 07102
        (973) 645-2700
 6      michael.campion@usdoj.gov
        jordan.anger@usdoj.gov
 7      For the Government

 8      ROBBINS AND ROBBINS LLP
        BY: SPENCER B. ROBBINS, ESQUIRE
 9      568 Amboy Avenue
        Woodbridge, New Jersey 07095
10      (732) 636-1600
        xmuss@aol.com
11      For the Defendant

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              THE DEPUTY CLERK:  All rise.
 2              (PROCEEDINGS held in open court before The Honorable
 3   SUSAN D. WIGENTON, United States District Judge, at
 4   11:14 a.m.)
 5              THE COURT:  Good morning, everyone.  You're welcome
 6   to have a seat in the back.  We'll go on the record.
 7              This is the matter of United States vs. Hull, et al.
 8   It's under Docket No. 09-1303.
 9              And, counsel, you may enter your appearances, please.
10              MR. CAMPION:  Michael Campion for the United States,
11   your Honor.
12              THE COURT:  Good morning.
13              MR. CAMPION:  Good morning.
14              MR. ANGER:  Jordan Anger for the United States, as
15   well, your Honor.
16              THE COURT:  Good morning, Mr. Anger.
17              MR. ANGER:  Good morning to you, your Honor.
18              MR. ROBBINS:  Spencer Robbins of Robbins & Robbins
19   representing the Hulls.
20              THE COURT:  All right.  And good morning to you,
21   Mr. Robbins, as well.
22              MR. ROBBINS:  Good morning.
23              THE COURT:  All right. So, counsel, this matter was
24   set down as a result of the Government's request for an Order
25   to Show Cause as to why the defendants should not be held in
```

1  contempt for failing to comply with this Court's November 30,
2  2017, Order.  And I have read the submissions that have been
3  provided to the Court, including the submission filed by you,
4  Mr. Robbins, dated yesterday, February 28th, which is Document
5  No. 121.
6         So I'll hear from the Government first, Mr. Campion
7  or Mr. Anger, and then I'll hear from Mr. Robbins.
8         MR. CAMPION:  Good morning, your Honor.
9         THE COURT:  Good morning.
10        MR. CAMPION:  The Government's position is very
11 straightforward.  Your Honor issued a lawful Order on
12 November 30, 2017.  Defendants were served with the Order, and
13 the defendants have failed to comply with the Order.
14        Your Honor ordered that the defendants take the final
15 administrative tasks in executing the settlement agreement, an
16 Order that they do so within 30 days of November 30, 2017.
17        The United States followed up multiple times with
18 counsel for the defendants and received no response, and the
19 first we heard of anything from defendants was yesterday.
20        THE COURT:  So.  So tell me this.  You read what he
21 wrote yesterday, right?
22        MR. CAMPION:  Yes, your Honor.
23        THE COURT:  All right.  So what's your thought about
24 that?
25        MR. CAMPION:  Your Honor, this submission raises

1  irrelevant and frivolous arguments.  The arguments are
2  frivolous in that to the extent they are trying to relitigate
3  the merits of this case, this case was fully litigated.  Your
4  Honor, approximately five years ago, ruled in favor of the
5  United States on summary judgment as to the ownership of the
6  previously disputed road.
7       Defendants moved to reconsider your Honor's opinion
8  and Order.  Your Honor ruled again in favor of the United
9  States and ordered the remaining issues to go to trial on the
10  issue of damages and the exact type of ownership of the road.
11       At that point, Judge Arleo, who was then a magistrate
12  judge, held a separate conference, and the parties reached a
13  settlement which defendants, on the record, agreed to.  They
14  agreed that the settlement was full and fair and that they
15  were satisfied with the representation of their counsel.
16       The settlement required two administrative tasks.
17  One was, at the United States's expense, United States would
18  have a survey done.
19       THE COURT:  Which you did, right?  2014.
20       MR. CAMPION:  We did, yes.
21       THE COURT:  Right.
22       MR. CAMPION:  Approximately four years ago.  We
23  provided the survey to defendants four years ago.  We've
24  received no specific substantive objections to the survey in
25  that time.

```
 1              THE COURT:  Okay.
 2              MR. CAMPION:  There was one objection about whether
 3   the survey was signed and sealed, and, as per e-mail
 4   communications that we've attached in some of our previous
 5   submissions to the Court, defendant's counsel apologized for
 6   not noticing that the survey was signed and sealed.
 7              THE COURT:  Because it was mentioned again in this
 8   most recent letter.
 9              MR. ROBBINS:  I wasn't the one representing them at
10   the time, your Honor.
11              THE COURT:  I'm sorry?
12              MR. ROBBINS:  I wasn't representing them at the time
13   that the original issues were --
14              THE COURT:  I got you.  Okay, sure.
15              MR. CAMPION:  But, nonetheless, we provided a signed
16   and sealed survey which was admitted to by defendant's counsel
17   at that time.  And we still have a signed and sealed survey.
18              THE COURT:  But I'm saying Mr. Robbins's letter dated
19   yesterday says, "Worley's survey was sent unsigned and without
20   a raised seal."
21              MR. CAMPION:  That is factually inaccurate.
22              THE COURT:  Okay.  I'm just saying.  You're saying --
23   Mr. Robbins is saying, "I didn't represent them at the time,"
24   and I'm like, your letter says it yesterday.  So that's,
25   apparently, an inaccuracy.  We'll say it that way.
```

1              All right.  Continue.
2              MR. CAMPION:  And so, without any objection at that
3    time, we again had to raise the matter to the Court when the
4    defendants had placed some obstructions in the road, which
5    your Honor had ruled was United States property.  Your Honor
6    again ruled in favor of the United States and ordered that the
7    defendants comply with the settlement.
8              And they have failed to do so within the timeframe
9    set by the Court, and they have provided no explanation as to
10   why they did so until yesterday, which raises frivolous and
11   inaccurate arguments.  And we, therefore, regrettably, must
12   ask the Court to find that the defendants are in civil
13   contempt of court.
14             THE COURT:  All right.  Very well.  Thank you,
15   Mr. Campion.
16             Mr. Robbins?
17             MR. ROBBINS:  First of all, my clients are just
18   regular people.  How do I put this, your Honor.  My clients
19   are regular, down-to-earth people.  They're in the excavation
20   business, and they bought properties with regard to it.
21             I started representing them latter part of 2017.  I'm
22   not contemptuous with regard to it.  And, frankly, I haven't
23   had a chance to meet with them in the last month because I've
24   been out or in trial.  And so part of that has been that
25   problem.

1             So that there's no inaccuracy, I've never seen a
2  signed survey, sealed survey.  That's the information I have.
3  I wasn't able to get the file from the previous counsel from
4  five years ago.  I guess they were happy to get out of the
5  case, and I wasn't informed of the information.
6             I get involved with this case, your Honor -- my
7  clients come in because I represented them on some other
8  matter and they tell me what occurred -- or tell me that they
9  don't understand any of the things that have happened.
10            And so I filed motions and for -- the first thing I
11 did, your Honor, and I presented it, and I understand your
12 ruling with regard to it, so it just -- the idea is to be, to
13 me, are they contemptuous with regard to this.
14            So I approached it as if, well, who owns the
15 property?  Let me get my top surveyor -- I'm sorry -- expert
16 with title, a guy named Joe Grabas from a company called
17 Trident Abstract.  And I said, you know what, could you just
18 tell me what's going on with regard to it, who owns this
19 property?
20            And I had asked my clients if they had ever had an
21 expert retained before.  They tell me no.  So I said, okay,
22 and we were given time in which to do it.  And so I go out and
23 get the expert.
24            And then there was a conference before -- and I don't
25 recall the judge.

1           THE COURT:  Wettre.

2           MR. ROBBINS:  Yes.  And so she called us in with
3  regard to it and, fortunately or unfortunately, I learn that
4  this case had been decided five years ago, because my clients
5  aren't even understanding of that with regard to it.
6           So I filed my motion with regard to it to say, wait a
7  minute, how can this be the Government's property when I have
8  an expert who went back to 1810 and went through every little
9  thing with regard to it?
10          Now, I'm not -- don't get me wrong, Judge.  I'm not
11 arguing.  I'm not being disrespectful.  I know you made a
12 decision with regard to it.  But it's my only understanding of
13 the case, and their only understanding of the case, as to what
14 happened.
15          So they buy a piece of property which there was no
16 issue on, no title issue problem when they bought it.  And
17 now, all of a sudden, they don't own a road, a dirt road that
18 nobody uses because the only access that the dirt road would
19 give is to the rest of the property because nobody goes
20 through it.  There's roads around it.
21          And so that's -- the understanding is that we have
22 this expert who says that anything happens different, if you
23 sign anything, it's going to cloud the title to the property.
24          They tell me about a survey with regard to
25 unsigned -- I have not seen a signed survey, a sealed survey.

1   I haven't seen a survey.  Otherwise I would give it to my
2   expert.
3           In fact, I have gone back to the expert, Joe Grabas,
4   and said, Could you tell me what I -- we should be doing with
5   regard to this to understand it, so I can get back to my
6   client, who I haven't really spoken to in a while because I've
7   been out in trials or out sick or whatever it was for the last
8   month.
9           So they're not contemptuous.  I just have to explain
10  to them, which I'm unable to, as to what occurred or how this
11  occurred or how it is that they don't own the property or --
12  and how it's going to affect their property, and how they're
13  going to affect whatever it is, because now there's a -- some
14  issue on the property on a road that doesn't -- that nobody
15  uses.  Nobody's ever used it for a --
16          THE COURT:  Let me just -- let me just interrupt you,
17  Mr. Robbins.  And I don't doubt anything that you're saying,
18  and I understand that you are very late to this litigation.
19          MR. ROBBINS:  Yeah.
20          THE COURT:  But you can't relitigate it.  And that
21  was sort of what we addressed back in November.  So I'm not
22  sure why we're here now in March --
23          MR. ROBBINS:  Because --
24          THE COURT:  -- still talking about it.  Honestly, I
25  don't know why we're still talking about it.  Because I think

1  I've been clear in several opinions now exactly what is
2  supposed to happen.
3          So all I want to hear from you is where do we go now.
4          MR. ROBBINS:  Well, I'll tell you where we go now,
5  your Honor.
6          THE COURT:  Because you understand what they're
7  asking for?
8          MR. ROBBINS:  I understand.
9          THE COURT:  Okay.
10         MR. ROBBINS:  What I had planned to do is to meet
11 with my client and the expert, Joe Grabas, next week with
12 regard to it so that it can be explained.  And then we'd have
13 to sign whatever there is, Judge, because I understand that
14 it's not going to be litigated or anything --
15         THE COURT:  Well, that's my point.  So I'm not sure
16 what this whole meeting with the expert is.  Maybe that's for
17 the benefit of your clients?
18         MR. ROBBINS:  And for me, your Honor, because --
19         THE COURT:  Okay.
20         MR. ROBBINS:  -- it's a matter of --
21         THE COURT:  Because it's not -- whatever the expert
22 says that does not comport with what the history of the case
23 is and what my decisions are is irrelevant for my purposes.
24         MR. ROBBINS:  It's -- it's -- my issue, Judge,
25 what -- what -- they have a number of questions and a number

1  of issues with regard to it -- why didn't they get money, why
2  didn't they -- and so I need him in there to go over it and
3  have them to sign it so that it's a -- a meeting of minds as
4  to what it is; that, you know what, I'm Johnny come lately;
5  I'm six years after the whole thing, didn't know any of those
6  things, and that's where it is.
7           And then I'm going to sit down and have a lengthy
8  discussion, and they're going to have to end up signing the
9  settlement agreements with regard to it.  If there's a --
10          THE COURT:  Or they won't.  And that's --
11          MR. ROBBINS:  And if there's a particular problem
12 with one of those surveys that we didn't realize, or that
13 we've -- that there is, I'll ask for another copy because I
14 haven't seen the one.
15          THE COURT:  You can get it today, I'm sure.
16          MR. ROBBINS:  That's fine.  And if you had said to
17 me --
18          THE COURT:  While you're here.  They'll give it to
19 you today.
20          MR. ROBBINS:  Then I'm going to go through it.  I
21 promised that that's what I would do.  I've just been not
22 available for the last month to do it because --
23          THE COURT:  But you've got to communicate that.
24          MR. ROBBINS:  Judge, I've been in trials, and I
25 thought there would be somebody else to take over my office.

1   It wasn't.  And, frankly, realized all the things behind.
2           Matter of fact, it's the first clear day that I
3   had -- actually, didn't -- so I wrote with regard to it to
4   tell you, you know what, part of the problem isn't them, it's
5   me to try to figure out what happened, what it was.
6           And you tell me this, this is what happened.  It's --
7   we're too late with regard to it.  It's all these different
8   things to try to figure out, hey, this is what you have, what
9   are your further actions with regard to it.  And that's what
10  it is, Judge.
11          So it's not any contemptuous.  They're relying on
12  upon me to tell --
13          THE COURT:  Well, no, it is contemptuous.  No, no.
14  It is contemptuous because there was an Order that was issued
15  November 30th that said there were 30 days.  So to the extent
16  that that could be not be fulfilled, there should have been
17  communication with your adversary.
18          I don't care why, I don't care who was supposed to do
19  whatever, but that should have been communicated.  We should
20  not be here wasting the Court's time and everybody else's time
21  addressing something that has already been addressed.
22          I will say this, and I want to be very clear.  We're
23  not going to keep doing this.  All right?  This is a 2009 case
24  that is closed for the Court's purposes.
25          And it's as simple as this:  I'll give you another

1  30 days.

2            MR. ROBBINS:  That's fair.

3            THE COURT:  Does that sound reasonable?

4            MR. ROBBINS:  That's very reasonable.

5            THE COURT:  All right.  Gives you another 30 days to

6  get it addressed.  If it is not completed, because it appears

7  that maybe there's some real disconnect in your clients'

8  understanding -- and I'm not suggesting they're not

9  hardworking, honest people who are truly confused.  But this

10 is a process, and this is a process whereby appeals have not

11 been filed.

12           So the fact that we entertained the last motion for

13 reconsideration, which was years after the decision, was as a

14 courtesy.  And the Court wrote on it and -- because it was a

15 courtesy to hopefully get them to a place of understanding.

16           But I want to be very clear.  That is done, and we're

17 not doing that anymore.  And I'm sure you understand as

18 learned counsel, Mr. Robbins, what the penalties are.  So this

19 is not just going to be where we just keep coming back and

20 forth and they still have questions, they're not sure.  It

21 doesn't work like that.

22           Contempt will result in some type of serious sanction

23 and/or penalty, which could even include incarceration, which

24 I'm sure they don't want nor do we want to impose that.  But

25 it's not going to go on and on ad infinitum without some type

1  of resolution.
2          So 30 days.  Today is March 1st.  Let's say
3  March 31st, by March 31st, that this is to be resolved in its
4  entirety.  We're not coming back to the Court for issues.
5          And if there is anything that needs to still be
6  addressed because they will not sign, et cetera, then what I
7  will direct you, Mr. Campion and Mr. Anger, is to just
8  reiterate that to the Court, file it again as an Order to Show
9  Cause, but we won't have the discussion at that time.  All
10 right?  Because I want to make sure that it's clear, as we
11 stand here today, what the outcome will be.  All right?
12         You guys are standing.  You're both standing.
13         MR. ANGER:  Well, you asked us a question.  We're
14 just going to say yes and sit down.
15         THE COURT:  Okay.
16         MR. CAMPION:  If I could add one thing, your Honor?
17         THE COURT:  Sure.
18         MR. CAMPION:  With respect to the survey, I will just
19 note for the Court that they've had the survey for four years.
20 To raise an objection now where we see -- where they have
21 failed to raise one for four years, it -- we don't see it
22 being a valid objection.
23         THE COURT:  Yeah.  And this is in Mr. Robbins'
24 defense.  I'm assuming they haven't given it to you,
25 Mr. Robbins?

1           MR. ROBBINS:  And the prior attorney.  In fact, I'm
2    aware that there's supposedly a report from a Holenstein which
3    was submitted and said these are the problems with regard to
4    it.
5           So I've been advised that that, along with things --
6    I mean, I've had a lot of conversations with the expert, and
7    so that's the information I have.  I don't have the files from
8    the previous -- they weren't cooperating --
9           THE COURT:  But the beauty of this, the beauty of
10   this, Mr. Robbins, and I'm sure you've been around the block
11   enough to know, is call your adversary.
12          The other attorney obviously is not cooperating.
13   They're not interested in being any part of this any longer.
14   Call your adversary, who's trying to reach out to you to
15   resolve it.  Clearly, they have the survey.  And so if you
16   don't have the survey -- we believe the Hulls have been
17   provided the survey and they had it.  Certainly their prior
18   counsel has it.
19          But if there is some dispute, just like, you know,
20   these disputes that were raised before like that there somehow
21   was no resolution, which clearly there had been.  And you know
22   clients have a tendency, they have a certain perception and
23   understanding of how things took place which don't comport
24   with reality at all.  That's just the nature of the practice
25   of law, and it happens every day.

1           So what I'll do, Mr. Campion, is just ask you as a
2    courtesy to just provide Mr. Robbins with a copy of the 2014
3    survey so that he has it and so whatever these discussions are
4    that he's had with his clients that it does not exist or
5    nobody's ever seen it, we can put those to bed.
6           MR. CAMPION:  Yes, your Honor.
7           THE COURT:  All right?
8           MR. CAMPION:  We will provide that today.
9           THE COURT:  Okay.
10          So they will give that to you today, Mr. Robbins.
11   Okay?
12          MR. ROBBINS:  Thank you.
13          THE COURT:  All right.  So we will -- I'll ask you
14   that, once again, if you have not received a signed copy of
15   all the documents, Mr. Campion, then just bring that to my
16   attention and we will reschedule the Order to Show Cause.
17          So for today's purposes I will deny it, but with the
18   understanding it's without prejudice to be raised going
19   forward if it is not signed by March 31st.
20          So you can just put that in a form of order so that
21   the record will accurately reflect what we did here today.
22          MR. CAMPION:  Thank you.
23          THE COURT:  Okay.  Questions?
24          MR. ROBBINS:  I think my father used to always say --
25   I practiced with him -- it wouldn't be a bad business if we

```
 1  didn't have to have clients.
 2          THE COURT:  I know.  See?  But we wouldn't have
 3  business.
 4          MR. ROBBINS:  That's what he would say.
 5          THE COURT:  Okay.  So all right.  You guys have a
 6  wonderful day.  Thank you so much for being here.
 7          MR. CAMPION:  Thank you, your Honor.
 8          THE COURT:  And I'll look for that Order from you,
 9  Mr. Campion.  Just make sure Mr. Robbins has seen it.
10          And Mr. Robbins will communicate, trial or no trial,
11  sickness or no sickness.
12          MR. ROBBINS:  Yes, your Honor.
13          THE COURT:  For better or for worse.  Amen.
14          MR. ROBBINS:  I'm not married to him, Judge.
15          THE COURT:  All right. Good.  All right.  Have a
16  great day.
17          THE DEPUTY CLERK:  All rise.
18          (The proceeding is adjourned at 11:31 a.m.)
19
20
21
22
23
24
25
```

1         FEDERAL OFFICIAL COURT REPORTER'S CERTIFICATE
2
3         I, **Joanne L. Sekella, CCR, CRCR, RMR,** Official Court
4  Reporter of the United States District Court for the District
5  of New Jersey, do hereby certify that the foregoing
6  proceedings are a true and accurate transcript of the
7  testimony as taken stenographically by and before me at the
8  time, place, and on the date hereinbefore set forth.
9         I further certify that I am neither related to any of the
10 parties by blood or marriage, nor do I have any interest in
11 the outcome of the above matter.
12
13
14 /S/ Joanne Sekella, CCR, CRCR, RPR, RMR          March 12, 2018
15 Official Court Reporter                                    Date
16
17
18
19
20
21
22
23
24
25